IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRADLEY GOOD et al.,                    :       CIVIL ACTION
                                        :       No. 14-4295
        Plaintiffs,                     :
                                        :
        v.                              :
                                        :
NATIONWIDE CREDIT, INC.,                :
                                        :
        Defendant.                      :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              March 14, 2016

I.   BACKGROUND ............................................... 3
     A.   Factual Background and Procedural History........... 3
     B.   The Proposed Class Action Settlement................ 6
          1. The Proposed Settlement Class .................... 6
          2. The Proposed Settlement Terms .................... 7
II.  DISCUSSION ............................................... 9
     A.   Whether Class Certification Is Proper.............. 10
          1. Rule 23(a) Factors ............................. 11
             a.  Numerosity ................................. 11
             b.  Commonality ................................ 12
             c.  Typicality ................................. 14
             d.  Adequacy of Representation ................. 16
          2. Rule 23(b)(3) Factors .......................... 19
             a.  Predominance ............................... 20
             b.  Superiority ................................ 22
     B.   Whether the Notice to Class Members Was Adequate.... 25
     C.   Whether the Proposed Settlement is Fair............. 27
          1. The Complexity, Expense, and Likely Duration of
             Litigation ...................................... 29
          2. The Reaction of the Class to Settlement ......... 30

3. The Stage of the Proceedings and Amount of Discovery Completed ........................................ 31

4. The Risks of Establishing Liability and Damages and Maintaining a Class Action Through Trial and the Ability of Defendant to Withstand a Greater Judgment ................................ 32

5. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation ................... 35

D.  Award to Class Representatives and Attorneys' Fees and Costs........................................... 37

1. Award to Class Representatives ................. 38

2. Attorneys' Fees ................................ 41

III. CONCLUSION ............................................ 44

Plaintiffs Bradley Good and Edward Soucek, through their proposed class counsel, and Defendant Nationwide Credit, Inc., have negotiated and agreed to a class action settlement that will resolve the instant matter--which alleges that Defendant mailed Plaintiffs and others similarly situated collection notices including language that is false, deceptive, or misleading under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e--in its entirety. On November 4, 2015, the Court preliminarily approved that settlement. ECF No. 47. Now class counsel has moved for final approval of the settlement and for attorneys' fees and costs. Because the settlement meets the Third Circuit's Girsh factors and the proposed awards to the class representatives and attorneys' fees and costs are reasonable, the Court will grant the motion for final approval of the settlement.

I.   **BACKGROUND**

    A.   <u>Factual Background and Procedural History</u>

        On September 9, 2013, Defendant sent Plaintiff Soucek
a dunning letter on behalf of creditor GE Capital Retail Bank
offering to settle his account for less than the amount owed.
<u>See</u> Compl. Ex. A, ECF No. 1. The letter included the following
language: "GE CAPITAL RETAIL BANK is required to file a form
1099C with the Internal Revenue Service for any cancelled debt
of $600 or more. Please consult your tax advisor concerning any
tax questions." <u>Id.</u> On December 10, 2013, Defendant sent
Plaintiff Good a similar letter on behalf of creditor American
Express. <u>See</u> Compl. Ex. B. The letter included the following
language: "American Express is required to file a form 1099C
with the Internal Revenue Service for any cancelled debt of $600
or more. Please consult your tax advisor concerning any tax
questions." <u>Id.</u>

        In their Complaint filed on July 16, 2014, Plaintiffs
claim that this language is false and misleading and constitutes
a "collection ploy" in violation of the FDCPA. <u>Id.</u> ¶¶ 24, 26,
36. The Complaint proposed a class comprised of "[a]ll persons
with addresses in the Commonwealth of Pennsylvania" "who were
sent one or more collection letter(s) from Defendant" that
included the challenged statement or a "substantially identical

statement." Id. ¶ 28. This Court has not yet decided whether to certify the class.[1]

Defendant filed a motion to dismiss on September 5, 2014, ECF No. 8, which this Court denied on October 27, 2014, ECF No. 21. In the memorandum accompanying the Court's order, ECF No. 20, the Court found that the challenged statement concerning IRS reporting requirements failed to accurately reflect controlling law, at least in some respects; could be deceptive and misleading under the least sophisticated debtor standard; and that the challenged statement was material. See generally ECF No. 20.

Through discovery, Plaintiffs learned that Defendant sent collection letters containing the challenged statement on behalf of its clients GE Capital Bank[2] and American Express from September 2012 to July 1, 2015. Defendant mailed such letters to

---

[1]     Plaintiffs filed a Motion for Class Certification on March 27, 2015, but this Court denied that motion as moot on July 16, 2015, because the parties reached a settlement agreement. In granting preliminary approval of the settlement reached by the parties, the Court made a preliminary determination, for settlement purposes only, that class certification was appropriate. ECF No. 47 at ¶ 5.

[2]     GE Capital Retail Bank changed its name to Synchrony Bank in June 2014. Pls.' Mot. 2 n.1, ECF No. 51.

approximately 15,225 Pennsylvania consumers in the one-year period preceding Plaintiffs' filing of their Complaint.[3]

In May 2015, the parties informed the Court that they had reached a class-wide settlement in principle. On July 9, 2015, Plaintiffs moved for preliminary approval of their proposed settlement and class certification. ECF No. 37. The Court initially rejected the proposed settlement, because the proposed settlement fund exceeded the FDCPA's statutory cap for class damages of the lesser of $500,000, or one percent of the net worth of the debt collector defendant, pursuant to 15 U.S.C. § 1692k(a)(2)(B). ECF Nos. 41 & 42. The parties therefore returned to the negotiating table and arrived at an amended settlement agreement that complied with the FDCPA's class damages cap. Thereafter, the Court granted Plaintiffs' motion for preliminary approval of the amended settlement agreement. ECF No. 47.

On January 25, 2016, Plaintiffs filed an uncontested motion for final approval of amended class settlement and for

---

[3]      Plaintiffs presumably limited the proposed class to those who received collection letters containing the suspect language within one year from the date of filing of the Complaint, because the statute of limitations for bringing a claim under the FDCPA is one year from the date on which the violation occurs. 15 U.S.C. § 1692k(d). Plaintiffs define this time period from July 16, 2013, to July 1, 2015. An affidavit by Defendant's corporate representative attaches a list of all 15,225 putative class members, although that list has not been filed on the docket. See Pls.' Mot. Ex. 6, Rico Aff. ¶ 2, ECF No. 51-7.

approval of attorneys' fees and costs. ECF No. 51. The final fairness hearing was held on February 8, 2016. ECF No. 52. No objections were filed to the proposed settlement, and no objectors appeared that the fairness hearing. Id.

      B.   <u>The Proposed Class Action Settlement</u>

The terms of the proposed class action settlement are set forth in the Amended Class Action Settlement Agreement, Pls.' Mot. Ex. 1, ECF No. 51-3 [hereinafter "Am. Settlement Agreement"], and are outlined below.

      1.   <u>The Proposed Settlement Class</u>

The Settlement Agreement provides for a settlement class defined as follows:

> All persons with addresses in the Commonwealth of Pennsylvania[] who were sent one or more collection letters from NCI[] that stated GE Capital Retail Bank, Synchrony Bank, or American Express "is required to file a form 1099C with the Internal Revenue Service for any cancelled debt of $600 or more," or a substantially identical statement[,] where the underlying debt being collected was incurred primarily for personal, family or household use; the letter(s) bear(s) a send date from July 16, 2013 through July 1, 2015; and the letter(s) were not returned as undeliverable.

Am. Settlement Agreement at ¶ 1(B). The Court preliminarily certified this class for settlement purposes. <u>See</u> ECF No. 47 at ¶ 5.

2.   The Proposed Settlement Terms

The Amended Settlement Agreement provides that Defendant will pay $196,960.00, which is one percent of Defendant's 2014 net worth, to a class administrator to create the settlement fund. Id. ¶ 16(A). This fund will then be distributed by the class administrator in equal shares to each of the class members who have not opted out of the class and whose class notice was not returned as undeliverable and without a forwarding address. Id. Because the FDCPA caps class damages at the lesser of $500,000 or one percent of the Defendant's net worth, 15 U.S.C. § 1692k(a)(2)(B), the settlement fund represents the maximum possible recovery that the class could have achieved.

Plaintiffs report that postcard notices were sent to a total of 14,866 class members that were not returned as undeliverable, which represents a penetration rate of 97.6%. Pls.' Mot. at 6. There are no objections and three requests for exclusion from the settlement. Id. Ex. 6, Sutor Decl. at ¶¶ 14-15, ECF No. 51-8. Accordingly, the 14,863 class members who have been reached by mail and who have not excluded themselves from the settlement will receive a check for approximately $13.25 each. Id. at 6.

Settlement checks will be mailed automatically to class members no later than twenty days after the final judgment

date; class members need not take any action, such as filing a claim form, to receive payment. Am. Settlement Agreement at ¶ 16(B).

While the original settlement agreement provided that any unclaimed funds would be awarded one-half to Legal Aid of Southeastern Pennsylvania and one-half to Mid-Penn Legal Services as a cy pres remedy, the Amended Settlement Agreement states that any residual funds will be addressed by motion to the Court after distribution and the administrator prepares an accounting of payments and checks cashed. Id. ¶ 16(C).

Next, the Amended Settlement Agreement states that Defendant will pay the class representatives, Plaintiffs Good and Soucek, a settlement for their individual FDCPA claims in the amount of $1,000 each. Id. ¶ 16(D). In addition, Defendant will pay the class representatives a service award of $1,000 each. Id. These payments--$4,000 in total--are separate and apart from and in addition to the class settlement fund. Id.

Further, the Amended Settlement Agreement provides that Defendant will pay class counsel approved reasonable attorneys' fees and litigation expenses in an amount not to exceed $125,000. Id. ¶ 17. As with the payments to the class representatives, payment of attorneys' fees and cost is separate and apart from and in addition to the amount that Defendant will

pay to the class. Id. Defendant will also pay the costs of class notice and administration of the settlement. Id. ¶ 6.

In exchange for the benefits provided by the settlement, settlement class members agree to release all claims that they may have against Defendant Nationwide Credit, Inc., American Express Company, GE Capital Retail Bank, Synchrony Bank, and their privies in connection with the challenged language in collection letters mailed to them by Defendant. Id. ¶¶ 1(F)-(G), 15.

## II.  DISCUSSION

Under Federal Rule of Civil Procedure 23(e), the settlement of a class action requires court approval. Fed. R. Civ. P. 23(e)(2). A district court may approve a settlement agreement only "after a hearing and on finding that it is fair, reasonable, and adequate." Id. When presented with a class settlement agreement, the court must first determine that the requirements for class certification under Rule 23(a) and (b) are met and then must separately determine that the settlement is fair to the class under Rule 23(e). In re Nat'l Football League Players Concussion Injury Litig., 775 F.3d 570, 581 (3d Cir. 2014); Sullivan v. DB Invs., Inc., 667 F.3d 273, 319 (3d Cir. 2011) (en banc) (quoting In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 257 (3d Cir. 2009)).

The factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence. In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 320 (3d Cir. 2008). The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court. In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 299 (3d Cir. 1998) (quoting Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975)).

Where, as here, the court has not already certified the class prior to evaluating the settlement, the court initially must determine whether the proposed settlement class satisfies the requirements of Rule 23(a) and (b). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 619 (1997); see also In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 341 (3d Cir. 2010).

A.   Whether Class Certification Is Proper

At the final fairness stage, the court must undertake a "rigorous analysis" as to whether class certification is appropriate. In re NFL, 775 F.3d at 582-83. Under Rule 23(a), Plaintiffs must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties

will fairly and adequately protect the interests of the class.
Fed. R. Civ. P. 23(a). Rule 23(b)(3), under which Plaintiffs
seek class certification, requires that "questions of law or
fact common to class members predominate over any questions
affecting only individual members, and that a class action is
superior to other available methods for fairly and efficiently
adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These
twin requirements are commonly referred to as predominance and
superiority. Sullivan, 667 F.3d at 296. The Court finds that
both the Rule 23(a) and (b)(3) factors are satisfied here.

### 1.    Rule 23(a) Factors

#### a.    Numerosity

The numerosity requirement is easily met in this case,
because the class includes thousands of Pennsylvania consumers.
Rule 23(a)(1) requires that the class be "so numerous that
joinder of all members is impracticable." Fed. R. Civ. P.
23(a)(1). No minimum number of plaintiffs is required to
maintain a suit as a class action, but generally if the named
plaintiff demonstrates that the potential number of plaintiffs
exceeds forty, the numerosity prong has been met. Stewart v.
Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).

Here, Plaintiffs have identified 15,225 Pennsylvania
consumers as members of the class and, through their notice

efforts, they actually reached 14,863 members who have not asked to be excluded from the settlement. The parties maintain that collection letters with the challenged language concerning Internal Revenue Service ("IRS") filing requirements were sent to 15,225 Pennsylvania consumers during the relevant time period. Pls.' Mot. Ex. 5, Rico Aff. ¶ 7, ECF No. 51-7. Specifically, 1,200 persons were sent letters involving debts owed to GE Capital Retail Bank or its successor Synchrony Bank, and 14,025 persons received letters involving debts owed to American Express. Id.

### b.   Commonality

Commonality exists in this case, because Plaintiffs allege that substantially similar debt collection letters in violation of the FDCPA were sent to all members of the class, thereby implicating similar issues of law and fact. Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality element requires that the plaintiffs "share at least one question of fact or law with the grievances of the prospective class." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 527-28 (3d. Cir. 2004) (citations omitted). To satisfy the commonality requirement, class claims "must depend upon a common contention . . . of such a nature that it is capable of

classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011). Generally, courts have held that the commonality requirement is satisfied in FDCPA actions when "the defendants have engaged in standardized conduct towards members of the proposed class by mailing them allegedly illegal form letter or documents." Saunders v. Berks Credit & Collections, Inc., No. 00-cv-3477, 2002 WL 1497374, at *6 (E.D. Pa. July 11, 2002) (citing Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998)).

Here, there are both questions of law and fact common to the proposed class. As a factual matter, the challenged statement concerning reporting requirements under the Internal Revenue Code and its accompanying regulations was standardized language that Defendant included in collection communications mailed to all class members. The only difference in the statements was the name of the addressee's creditor, either GE Capital Retail Bank or American Express. Further, common legal questions include, inter alia, whether Defendant made any false, deceptive, or misleading representations in connection with the collection of any debt in violation of the FDCPA, 15 U.S.C. § 1692e, and whether the language in Defendant's form collection letters misstated requirements under IRS regulations.

c.   <u>Typicality</u>

The typicality element is satisfied, because Plaintiffs Good's and Soucek's injuries are identical to those of all class members since all injuries flow from the same allegedly illegal language in Defendant's collection letters. Rule 23(a)(3) requires that the class representatives' claims be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). The typicality inquiry is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." <u>Baby Neal v. Casey</u>, 43 F.3d 48, 57 (3d Cir. 1994). Where claims of the representative plaintiffs arise from the same alleged wrongful conduct on the part of the defendant, the typicality prong is satisfied. <u>Warfarin</u>, 391 F.3d at 532.

Here, all members of the proposed class received collection letters containing nearly identical language about IRS reporting requirements, which Plaintiffs allege violated the FDCPA's ban on false, deceptive, or misleading representations in debt collection communications. The use of this language on the part of Defendant gives rise to the sole claim in this case. The Court need not inquire as to Defendant's intentions to include the challenged language in any one particular letter or at any one period of time, because "[t]he FDCPA is a strict

14

liability statute to the extent it imposes liability without proof of an intentional violation." <u>Allen ex rel. Martin v. LaSalle Bank, N.A.</u>, 629 F.3d 364, 368 (3d Cir. 2011).

Further, the question of whether the challenged statement is false, deceptive, or misleading under the FDCPA is answered under an objective, rather than a subjective, standard. The Third Circuit evaluates 15 U.S.C. § 1692e claims under the "least sophisticated debtor [or consumer]" standard.[4] <u>Brown v. Card Serv. Ctr.</u>, 464 F.3d 450, 453-54 (3d Cir. 2006). Therefore, the Court need not assess whether Good or Soucek--nor any other individual class member--was actually deceived or misled by the letter, because the effect that the challenged language had on any individual consumer is irrelevant. To prevail, Plaintiffs Good and Soucek would need only show that the challenged statement was deceptive from the perspective of the least sophisticated consumer. This is the same showing that any member

---

[4]       Consistent with the basic purpose of the FDCPA, this objective standard aims "to protect 'all consumers, the gullible as well as the shrewd,' 'the trusting as well as the suspicious,' from abusive debt collection practices." <u>Id.</u> at 454 (quoting <u>Wilson v. Quadramed Corp.</u>, 225 F.3d 350, 354 (3d Cir. 2000)). The standard "does not . . . provide solace to the willfully blind or non-observant," <u>Campuzano-Burgos v. Midland Credit Mgmt., Inc.</u>, 550 F.3d 294, 299 (3d Cir. 2008), and "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." <u>Brown</u>, 464 F.3d at 454 (quoting <u>Quadramed Corp.</u>, 225 F.3d at 354-55) (internal quotation marks omitted).

of the proposed class would need to make to prevail on an FDCPA claim against Defendant.

d.   Adequacy of Representation

Finally, the Court has no reason to doubt that the proposed class representatives, Good and Soucek, and proposed class counsel adequately represent the interests of the class in this matter. Rule 23(a)(4) requires representative parties to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "serves to uncover conflicts of interest between the named parties and the class they seek to represent." Amchem v. Windsor, 521 U.S. 591, 625 (1997). The Third Circuit applies a two-prong test to assess the adequacy of the proposed class representatives. First, the court must inquire into the "qualifications of counsel to represent the class," and second, it must assess whether there are "conflicts of interest between named parties and the class they seek to represent." In re Prudential Ins. Co. of Am. Sales Practice Litig., 148 F.3d 283, 312 (3d Cir. 1998)

i.   Adequacy of Class Counsel

Here, Plaintiffs' counsel has substantial experience in consumer class action litigation and is therefore well qualified to represent the class. The class is represented by three attorneys: Cary Flitter of Flitter Milz, P.C.; Andrew Milz

16

of the same firm; and Carlo Sabatini of the Sabatini Law Firm. The qualifications of these attorneys are highlighted below and are more fully set out in their certifications submitted with this motion, as well as the motion for preliminary approval of the settlement. See generally Pls.' Mot. Ex. 10, Flitter Cert., ECF No. 51-12; Ex. 11, Milz Cert., ECF No. 51-13; Ex. 12, Sabatini Cert., ECF No. 51-14; see also Pls.' Mot. Prelim. Approval at 10-12, ECF No. 45. Defendant has not challenged the qualifications of these attorneys, and there is no indication in the papers filed in this case that Plaintiffs' counsel has been unable provide capable representation.

Mr. Flitter has been approved as class counsel in several other consumer class actions in the Eastern District of Pennsylvania. Pls.' Mot. Prelim. Approval at 10. He has led CLE seminars on consumer class actions, served as adjunct faculty at two local law schools, and co-authored a treatise entitled Pennsylvania Consumer Law. Id.

Mr. Milz, an associate at Flitter Lorenz, P.C., has practiced consumer credit litigation since 2008 and has tried consumer cases in the Eastern District of Pennsylvania. Id. at 11. He has presented at local and national conferences on FDCPA and class action topics and has also co-authored the treatise referenced above. Id.

17

Finally, Mr. Sabatini has practiced law for over fifteen years and has served as plaintiff's counsel in a number of FDCPA matters. Id. He, too, has lectured on consumer matters and contributed to the Pennsylvania Consumer Law treatise. Id. Mr. Sabatini was recently appointed as co-counsel for a certified class of consumers in an FDCPA case in this district. Blandina v. Midland Funding, LLC, No. 13-1179, Doc. 57 (E.D. Pa. Dec. 23, 2014).

Together, these attorneys litigated this matter for roughly one and a half years. They successfully opposed Defendant's motion to dismiss, propounded written discovery requests upon Defendant, and took the deposition of Defendant's corporate designee. Further, they prepared a motion for class certification. Finally, the proposed class counsel engaged in settlement negotiations with Defendant and its counsel, including over such matters as class composition, Defendant's net worth, and the settlement fund. Finally, class counsel has committed substantial resources to the prosecution of this action and no doubt will continue to do so during the administration of the settlement as necessary. Accordingly, this factor weighs in favor of class certification.

### ii.   Adequacy of Class Representatives

There are no conflicts of interest between Plaintiffs Good and Soucek and the class they seek to represent. As explained above, the conduct of the Defendant is the sole focus of this case. All members of the putative class, including the proposed class representatives, received communications from Defendant containing nearly identical language as to IRS reporting requirements, and any inquiry into the deception caused by this challenged statement would be from the perspective of this least sophisticated consumer. Nothing in the record suggests that Good and Soucek have been unwilling or unable to prosecute the claims of the other class members. The Court therefore deems Good and Soucek as adequate class representatives.

***

In sum, Plaintiffs have demonstrated compliance with each of the Rule 23(a) prerequisites for class certification.

### 2.   Rule 23(b)(3) Factors

In addition to satisfying each of the prerequisites in Rule 23(a), a class representative must show that the action falls into at least one of the three categories provided in Rule 23(b). Plaintiffs bring this action under Rule 23(b)(3). Pls.' Mot. Prelim. Approval at 6. Under Federal Rule of Civil

Procedure 23(b)(3), a class action may be maintained if common questions of law or fact predominate over questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

a.   Predominance

In this case, where Defendant sent nearly identical debt collection letters to all members of the putative class, common questions of law and fact predominate due to the virtually identical factual and legal predicates of each class member's claim. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 624. Further, it assesses whether a class action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment.

Here, class issues with respect to both liability and damages easily predominate over individual issues. With regard to liability, Third Circuit case law, as discussed above, requires an FDCPA plaintiff to prove that the offending debt collection practice was deceptive from the perspective of the least sophisticated consumer. As such, there would be no need

20

for individual proofs as to each class member's reaction to the letter, because a plaintiff is not required to show that she herself was deceived. The primary question presented by the sole claim in this case--whether the statement concerning IRS reporting requirements would deceive the least sophisticated consumer--is common to all class members' claims.

With regard to damages, the FDCPA allows for class-wide recovery. Under 15 U.S.C. § 1692k(a)(2)(B), "any debt collector who fails to comply with [the FDCPA] with respect to any person is liable to such person in an amount equal to the sum of . . . in the case of a class action, (i) such amount for each named plaintiff as could be recovered [in any action by an individual, such additional damages as the court may allow, but not exceeding $1,000], and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector . . . ." The settlement reached by the parties is structured as a class award, as it is a single fund of $196,960.00 that will divided in equal shares among the class members who could be located by mail. Am. Settlement Agreement ¶ 16(A). Accordingly, there will be no need to calculate individual damages in this matter.

b.  Superiority

The superiority requirement is also apparent in a case such as this one, in which thousands of individuals seek relief for violation of the FDCPA regarding a substantially identical debt collection letter. The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." Warfarin, 391 F.3d at 533-34 (citations omitted) (internal quotation marks omitted). When assessing superiority and "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." Amchem, 521 U.S. at 620.

FDCPA claims have a special relationship with the class action mechanism. Indeed, the Third Circuit has found that class actions are "fundamental to the statutory structure of the FDCPA." Weiss v. Regal Collections, 385 F.3d 337, 345 (3d Cir. 2004). Congress clearly contemplated that this procedural mechanism would be used to bring FDCPA claims, as evidenced by the Act itself and its legislative history. First, Congress specifically provided for class damages in the FDCPA. See 15 U.S.C. § 1692k(a)(2)(B) (establishing a cap on damages in FDCPA class actions). Second, Congress intended for the FDCPA to be

self-enforcing. Weiss, 385 F.3d at 345; see also Graziano v. Harrison, 950 F.2d 107, 113 (3d Cir. 1991) (The FDCPA "mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general."). As the Third Circuit has recognized, without the class action device, "meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action." Weiss, 385 F.3d at 345. A class action's proffer of a means for "[c]ost-spreading can also enhance the means for private attorney general enforcement and the resulting deterrence of wrongdoing." In re Gen. Motors Corp., Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 784 (3d Cir. 1995).

        The class action mechanism is a superior method of adjudicating the FDCPA claims in this case. Defendant mailed letters with the challenged language to over 15,000 Pennsylvania consumers. Even if a mere fraction of the members of the putative class were to litigate their claims individually, the courts would be significantly burdened by numerous lawsuits. It is more probable, however, that Pennsylvania consumers would find it uneconomical to litigate their claims individually, thereby hindering the FDCPA's private attorney-general enforcement mechanism. The FDCPA's damages provisions limit an individual plaintiff's damages to "any actual damage" sustained

by the plaintiff as a result of the defendant-debt collector's failure to comply with the FDCPA, plus "such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(1)-(2)(A). Damages in a FDCPA case are typically so small that litigation of a single claim is hardly worth the cost and effort of litigation. Indeed, under the terms of the proposed settlement, each class member would receive an estimated $13.25, with the class representatives receiving a total recovery of $2,000 each.

Further, the proposed settlement will offer prompt relief to the class, whereas individual litigation may be much more time consuming. The settlement agreement provides that upon entry of final judgment, Defendant will pay $196,960 to the class administrator to create the settlement fund. Am. Settlement Agreement at ¶ 16(A). Settlement checks will then be mailed to class members within twenty days of the final judgment date. Id. ¶ 16(B).

\*\*\*

In sum, Plaintiffs have demonstrated compliance with each of the Rule 23(b)(3) prerequisites for class certification. Because the Rule 23(a) factors are also satisfied, the Court finds that the class may be certified.

B.    Whether the Notice to Class Members Was Adequate

Having determined that the class may be certified, the Court next reviews the notice procedures implemented by Plaintiffs. "In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." Prudential, 148 F.3d at 306. Rule 23 includes two provisions concerning notice of the class members.

First, Rule 23(c)(2)(B) requires that class members be given the best notice practicable under the circumstances, including individual notice to all potential class members identifiable through reasonable efforts. Specifically, the Rule provides that such notice must, in clear, concise, and plain language, state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) the class member's right to enter an appearance by an attorney; (v) the class member's right to be excluded from the class; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of settlement on class members. Fed. R. Civ. P. 23(c)(2)(B).

Second, Rule 23(e) requires notification to all members of the class of the terms of any proposed settlement.

Fed. R. Civ. P. 23(e). This "notice is designed to summarize the litigation and the settlement" and "to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." Prudential, 148 F.3d at 327.

In the Court's order granting preliminary approval of the settlement, the Court directed notice by newspaper publication, through a website dedicated to this matter, and by postcard mailing. ECF No. 47. At that time, the Court reviewed the parties' notice program, including the language of the notices, in advance and made revisions to the language of the notices to satisfy itself that the notices were clear and included all requisite information. Ultimately, the notices explained, in plain language, the settlement and the procedures necessary to file a claim, opt out, or object to the settlement.

Plaintiffs report that all three methods of notice were timely executed by the settlement administrator, Heffler Claims Group. See generally Pls.' Mot. Ex. 6, Teresa Sutor Decl., ECF No. 51-8. Heffler launched a dedicated website at www.goodsoucksettlement.com and ran a one-time publication in the Philadelphia Inquirer on December 3, 2015. Id. at ¶¶ 8-9. On December 4, 2015, Heffler mailed notice of the class settlement to 15,225 class members with Pennsylvania addresses. Id. at ¶ 10. Notices returned to Heffler as undeliverable were then re-

26

mailed to updated addresses after an address search. Id. at ¶¶ 11-12. After mailing and re-mailing, postcard notices were sent to a total of 14,866 class members that we not returned as undeliverable--a penetration rate of 97.6%. Id. at ¶ 13.

Accordingly, the Court finds that the notice program used in this case satisfies Rule 23(c)(2)(B) and (e).

C.   Whether the Proposed Settlement Is Fair

After class certification, the court must approve the settlement of a class action and determine whether the proposed settlement is "fair, adequate, and reasonable," as required by Rule 23(e)(2). Prudential, 148 F.3d at 316-17. Where the parties simultaneously seek certification and settlement approval, the Third Circuit requires "courts to be even more scrupulous than usual" when they examine the fairness of the proposed settlement. Id. at 317 (quoting GM Trucks, 55 F.3d at 805). This heightened standard is designed to ensure that class counsel has demonstrated "sustained advocacy" throughout the course of the proceedings and has protected the interests of all class members. Id. at 317 (quoting GM Trucks, 55 F.3d at 806). Ultimately, "[t]he decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." Girsh, 521 F.2d at 156.

In _Girsh_, the Third Circuit Court identified nine factors to be considered when determining the fairness of a proposed settlement: (1) the complexity, expense, and likely duration of the litigation;(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. _Girsh_, 521 F.3d at 157.

In _Prudential_, the Third Circuit identified additional, nonexclusive factors for courts to consider. 148 F.3d at 323. Those factors, which often overlap with the _Girsh_ factors, include:

> the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved--or likely to be achieved-- for other claimants; whether class or subclass members are accorded the right to opt out of the settlement;

> whether any provision for attorneys' fees are
> reasonable; and whether the procedure for processing
> individual claims under the settlement is fair and
> reasonable.

Id. While the court must make findings as to the Girsh factors,
the Prudential factors are illustrative of additional factors
that may be useful but that do not trigger a requirement of
specific findings. Here, mechanical application of the Girsh
factors is perhaps unfitting, because the settlement affords the
class the maximum recovery permitted under the FDCPA's damages
cap. Still, the Court turns to apply the Girsh factors--some
individually, some together as a group--before separately
addressing the class representatives' awards and the attorneys'
fees and costs.

### 1.   The Complexity, Expense, and Likely Duration of Litigation

The first Girsh factor is the complexity, expense, and
likely duration of the litigation, which aims to take into
account the "probable costs, in both time and money, of
continued litigation." In re Cendant Corp. Litig., 264 F.3d 201,
233 (3d Cir. 2001). Plaintiffs argue that this case was filed
roughly a year and a half ago and has been "hotly contested."
Pls.' Mot. 8. They note that Defendants moved to dismiss the
case (albeit unsuccessfully), Plaintiff filed a contested motion
for class certification, and Defendant likely would have moved

for summary judgment after class certification was decided. Id.
at 8-9. Plaintiffs also note that the amount of damages in an
FDCPA is a question for a jury. Id. at 9. Accordingly, continued
litigation would have entailed rulings concerning summary
judgment and class certification, a trial on at least damages,
and potential appeals from any certification decision or jury
verdict. As such, significant time would pass before class
members would see any relief in this case. Accordingly, this
factor weighs heavily in favor of settlement.

### 2.   The Reaction of the Class to Settlement

The second Girsh factor to be considered is the
reaction of the class to the settlement. Plaintiffs represent
that 14,866 persons received notice through the direct mailing
program. Only three timely requests for exclusion were made, and
there have been no objections filed. Pls.' Mot. 9. Such a
reaction is to be expected in a consumer case with a relatively
small recovery no matter the merits of the settlement. Reibstein
v. Rite Aid Corp., 761 F. Supp. 2d 241, 252 (E.D. Pa. 2011).
Still, that the settlement is entirely uncontested is evidence
of its fairness. See, e.g., Prudential, 148 F.3d at 318
(affirming district court's conclusion that class reaction was
favorable when 19,000 out of 8,000,000 class members opted out
and 300 objected); Stoetzner v. U.S. Steel Corp., 897 F.2d 115,

118–19 (3d Cir. 1990) (noting that the second <u>Girsh</u> factor "strongly favor[ed]" settlement where "only twenty-nine" "of 281 class members" objected to the settlement's terms). As such, this factor also favors approval of the settlement.

### 3.   The Stage of the Proceedings and Amount of Discovery Completed

The third factor to be considered is the stage of the proceedings and the amount of discovery completed. This <u>Girsh</u> factor requires the Court to evaluate whether Plaintiffs had an "adequate appreciation of the merits of the case before negotiating" settlement. <u>Prudential</u>, 148 F.3d at 319. Where, as here, the class obtains the maximum recovery permitted by law, this factor seems inapplicable. Nevertheless, Plaintiffs note that this settlement comes after a year and a half of litigation. Pls.' Mot. at 10. Plaintiffs point to the motion practice in connection with Defendant's motion to dismiss and Plaintiff's class certification motion, which afforded Plaintiffs an opportunity to assess the strengths and weaknesses of their case. Plaintiffs also report that they have taken significant discovery in this case. <u>Id.</u> The parties have propounded and responded to multiple sets of interrogatories and documents requests. <u>Id.</u> Class counsel then deposed Defendant's corporate designee in Luxembourg by phone concerning Defendant's net worth and the composition of the class. <u>Id.</u> at 10. Class

counsel maintains that the discovery exchanged provided them
with sufficient knowledge of the class composition, Defendant's
financial status, and possible defenses Defendant would assert
at trial. Upon receipt of this information, class counsel was
well-informed and well-prepared for settlement negotiations. Id.
at 11. The Court therefore finds that a reasonable amount of
discovery has been taken and that both parties have a fairly
accurate view of their risks of continued litigation. This
factor thus favors approval of the settlement.

>    4.    The Risks of Establishing Liability and Damages
>          and Maintaining a Class Action Through Trial and
>          the Ability of Defendant to Withstand a Greater
>          Judgment

The fourth, fifth, sixth, and seventh Girsh factors
are the risks of establishing liability, the risks of
establishing damages, the risks of maintaining the class action
throughout the trial, and the ability of the defendant to
withstand a greater judgment. For purposes of brevity, and
because certain of these factors are irrelevant in a maximum
recovery settlement such as the instant settlement, the Court
will discuss these factors together.

These Girsh factors require the Court to "survey the
potential risks and rewards of proceeding to litigation in order
to weigh the likelihood of success against the benefits of an
immediate settlement." Warfarin, 391 F.3d at 537. As to the

32

risks of establishing liability, this factor "examine[s] what
the potential rewards (or downside) of litigation might have
been had class counsel elected to litigate the claims rather
than settle them." Gen. Motors, 55 F.3d at 814. As to damages,
this factor "attempts to measure the expected value of
litigating the action rather than settling it at the current
time." Cendant Corp., 264 F.3d at 238-39 (quoting Gen. Motors,
55 F.3d at 816). Finally, "[b]ecause the prospects for obtaining
certification have a great impact on the range of recovery one
can expect to reap from the [class] action, this factor
[concerning the risks of maintaining the class action through
trial] measures the likelihood of obtaining and keeping a class
certified if the action were to proceed to trial." Warfarin, 391
F.3d at 537.

As to the risk of maintaining the class action through
trial--and as discussed more fully above with respect to the
Rule 23(b)(3)'s superiority requirement--FDCPA claims,
particularly those based on form collection letters, are well
suited for class disposition. However, Defendant has indicated
that it would oppose class certification. Accordingly,
Plaintiffs suggest that there is a possibility that Defendant's
position could be embraced by this Court or on appeal, a factor
which militates against approval of the settlement. Pls.' Mot.
at 13.

As to the risks of establishing liability and damages,
Plaintiffs believe that the likelihood of establishing
Defendant's liability is strong, but they acknowledge that there
are certain risks to proving statutory damages under the FDCPA.
For instance, Defendant has argued that there is a lack of
actual harm and that its misrepresentations concerning IRS
reporting requirements were "immaterial." Pls.' Mot. at 11.
Moreover, Plaintiffs note that, due to the FDCPA's ceiling on
class action damages, Plaintiffs' damages will be capped at
$196,960--exactly what they are getting through the settlement
fund--so long as the Court were to determine that 2014 is the
appropriate time at which to calculate Defendant's net worth.
Id. at 12. And a jury would award the statutory maximum only if
Plaintiff were able to convincingly argue that "the level of
non-compliance with the FDCPA was so frequent, pervasive, and
intentional as to command the maximum statutory limit." Id.

As to the ability of defendants to withstand a greater
judgment, this factor is "most clearly relevant where a
settlement in a given case is less than would ordinarily be
awarded but the defendant's financial circumstances do not
permit a greater settlement." Reibstein, 761 F. Supp. 2d at 254.
Here, the FDCPA's statutory cap on class damages limits
recovery, and Plaintiffs are already receiving the largest

34

possible recovery permitted under the statutory cap.

Accordingly, these Girsh factors support final approval.

     5.    The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

     The eighth and ninth factors are the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation. "The reasonableness of a proposed settlement depends in part upon a comparison of the present value of the damages the plaintiffs would recover if successful, discounted by the risks of not prevailing." Boone v. City of Phila., 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing Gen. Motors, 55 F.3d at 806). As noted above, a verdict for Plaintiffs "could certainly yield less than $196,960 attained here by settlement--but it could not yield more." Pls.' Mot. at 14. Plaintiffs also note that class counsel, who is very experienced in FDCPA litigation, endorses this settlement as favorable to the class in light of the FDCPA's damages cap and the nature of Defendant's violation in this case. The opinion of experienced class counsel that settlement is in the class's best interest is entitled to "significant weight." Id. (citing Lake v. First Nationwide Bank, 900 F. Supp. 726, 732 (E.D. Pa. 1995); see also In re Fasteners

35

Antitrust Litig., No. 08-md-1912, 2014 WL 285076, at *4 (E.D.
Pa. Jan. 24, 2014)).

The Court notes that, as the parties represented
during the preliminary approval and final fairness hearings,
roughly one-third of the class consists of consumers who
received letters from Defendant after the Complaint in this
matter was filed and who the parties agreed to add to the
proposed class during settlement negotiations. Due to the
FDCPA's statutory cap under § 1692k(a)(2)(B), which does not
take into account the size of the class in capping class
damages, the addition of these 5,000 or so members adversely
affected the compensation received by the original 10,000 or so
members. The expansion of the class during settlement
negotiations may therefore raise an issue of fairness of the
settlement to those roughly 10,000 members of the class as
originally proposed. As a practical issue, and as Defendant
represented at the final fairness hearing, Defendant may have
been unwilling to settle the matter without the inclusion of the
5,000 additional class members. Final Fairness Hr'g. Tr. at 15,
Feb. 8, 2015, ECF No. 52. And there was no guarantee that if the
class as originally proposed had litigated this matter through
trial, they would have gotten such a favorable recovery. Id. at
16. Given that neither Plaintiffs nor any members of the class
have objected to the expansion of the class, and given the

36

unique circumstances of this case in which Plaintiffs are
receiving the maximum recovery permitted under the FDCPA's
statutory cap on damages, the Court will accept the class
expansion and decline to deny approval of the settlement on this
basis.

In addition, apparently twenty-six members of the
class are commercial entities, Pl.'s Mot. at 6, and therefore
are not eligible to receive compensation under the FDCPA, which
aims to protect individual consumers. See 15 U.S.C. § 1692
(declaring congressional findings and the purpose of the FDCPA).
Given that the parties represent that removing these twenty-six
commercial entities from the class would generate significant
administrative costs with a de minimis corresponding benefit to
the remaining class members (they would, at best, receive an
additional few cents in their settlement checks), the Court will
not require these commercial entities to be removed and finds
that the inclusion of these entities in the class does not
affect the settlement's fairness.

D. Award to Class Representatives and Attorneys' Fees and
Costs

Having completed its analysis of the Girsh factors,
the Court will now address two other factors it believes bear on
the fairness of the settlement: the award to the Plaintiffs
representing the class and the attorneys' fees and costs.

37

1.   <u>Award to Class Representatives</u>

Plaintiffs seek approval of a service award of $1,000 each to the named plaintiffs, Good and Soucek, a sum which Defendant has agreed to pay separate and apart from and in addition to the class settlement fund. In addition, Good and Soucek will receive a separate statutory damage award of $1,000 each, which Defendant has also agreed to pay separate and apart from and in addition to the class settlement fund. Such awards are proper under the FDCPA. Moreover, Defendant has agreed to these payouts, and no class member has objected.

The Third Circuit has instructed district courts to carefully scrutinize a settlement agreement that satisfies the class representative's individual claims in full and pays a significant amount in cash to the lawyers who represented the class but provides for only a token award to the class members. <u>Gen. Motors</u>, 55 F.3d at 794-95. Agreements of this type not only raise public suspicions about the purpose and value of the class action mechanism, but also generate questions regarding the possibility of collusion between the parties. <u>Fry v. Hayt, Hayt & Landau</u>, 198 F.R.D. 461, 472 (E.D. Pa. 2000).

The FDCPA, however, specifically allows a higher recovery for the claims by class representatives than for the claims asserted for the other class members. Under the FDCPA, a named plaintiff may recover actual damages, <u>see</u> 15 U.S.C. §

38

1692k(a)(1), and statutory damages, see id. § 1692k(a)(2)(A), as well as a pro-rata share of the entire recovery, see id. § 1692k(a)(2)(B). Fry, 198 F.R.D. at 472. In light of this express Congressional authorization, this Court will approve the recovery by the named Plaintiffs of $1,000 each for their individual claims.

With regard to the $1,000 incentive award for each named plaintiff, such an award is "not uncommon in class action litigation and particularly where, as here, a common fund has been created for the benefit of the entire class." Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 145 (E.D. Pa. 2000). But incentive awards are not necessarily compelled in each case. Rather, to be entitled to an incentive award, the named plaintiff must show: (1) the risks that the named plaintiff undertook in commencing class action; (2) any additional burdens assumed by the named plaintiff but not unnamed class members; and (3) the benefits generated to class members through the named plaintiff's efforts. In re U.S. Bioscience Sec. Litig., 155 F.R.D. 116, 121 (E.D. Pa. 1994) (footnotes omitted). "In deciding whether such an award is warranted, [other] relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Cook v.

Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998). Each class representative must suggest the hourly rate at which he shall be compensated. Fry, 198 F.R.D. at 473. In determining the hourly rate, the Court should consider the class representative's lost wages as a result of his involvement in this litigation, evidence of compensation paid to other representatives in other class actions, and other relevant community rates. Id.

In this case, although Good and Soucek did not show that they undertook any special "risk" in bringing the action, their actions did generate a common fund which is the maximum possible recovery permitted under the FDCPA. In addition, as Plaintiff's counsel points out, their names will be forever associated with a litigation concerning consumer debt collection notices--a matter which could be embarrassing to some.

Further, Plaintiffs Good and Soucek have submitted certifications outlining their efforts in connection with this case. Pls.' Mots. Exs. 8 & 9, ECF Nos. 51-10 & 51-11. Good declared that he spent hours meeting and talking by phone with class counsel, reviewing pleadings and discovery, and attending the preliminary approval hearing. He explained that he is a salaried employee, but his salary breaks down to approximately $50/hour. Pls.' Mot Ex. 8. Soucek declared that he spent time reviewing pleadings and strategy with class counsel. Pls.' Mot. at 16. Soucek is disabled and not currently working, so he did

40

not suggested an hourly rate of compensation. Both Plaintiffs attended the final fairness hearing, and Good testified as to his efforts in connection with this litigation.[5] Final Fairness Hr'g. Tr. at 32-34, Feb. 8, 2015, ECF No. 52.

Because each named plaintiff has shown that he spent time and money in pursuit of this litigation, the Court will permit recovery of $1,000 in an incentive award to each of them.

### 2. Attorneys' Fees

Class counsel move for approval of attorneys' fees and costs in the amount of $125,000, to compensate Flitter Milz, P.C., and Sabatini Law Firm, LLC, for services rendered to the class. In connection with their motion, class counsel submitted documents showing that (1) Cary F. Flitter, a partner of Flitter Milz, P.C., spent 94.4 hours at an hourly rate of $645.00, for a total of $60,888.00 in fees; (2) Andrew M. Milz, an associate of Flitter Milz, P.C., spent 189.7 hours at any hourly rate of $345.00, for a total of $65,446.50 in fees; (3) Joan M. Raughly, a legal assistant of Flitter Milz, P.C. spent 13.1 hours at an hourly rate of $180.000, for a total of $2,358.00 in fees; (4)

---

[5]     Soucek was unable to testify at the final fairness hearing due to health problems. The Court notes, however, that he drove from his home in Missouri to Philadelphia for the hearing, which undoubtedly involved significant time and certain out-of-pocket costs to him. Final Fairness Hr'g. Tr. at 31. Soucek's affidavit also outlines his efforts in connection with this case.

Carlo Sabatini, a partner of the Sabatini Law Firm, LLC, spent 48.1 hours at any hourly rate of $375.00, for a total of $18,037.50 in fees; (5) Brett Freeman, an associate of Sabatini Law Firm, LLC, spent 1.9 hours at an hourly rate of $275.00, for a total of $522.50 in fees; and (6) various paralegals at the Sabatini Law Firm, LLC, spent 54.5 hours at an hourly rate of $125.00, for a total of $19,747.50 in fees. Pls.' Mot. at 20. The sum of class counsel's total attorneys' fees, $147,502.50, and costs, $13,709.09, exceeds the $125,000 sought by way of the instant motion. Id. at 20, 29. Defendants do not contest Plaintiff's motion,[6] and no class member has objected to the award of these fees and costs. The Amended Settlement Agreement provides that the attorney's fees and costs paid to class counsel will be separate and apart from and in addition to the class settlement fund.

In determining whether to award counsel attorneys' fees, the court ordinarily "must conduct a 'thorough judicial review' of class counsels' request for attorneys' fees." Perry v. FleetBoston Fin. Corp., 229 F.R.D. 105, 118 (E.D. Pa. 2005). The court is tasked with ensuring that the attorneys' fees sought are reasonable. See Fed. R. Civ. P. 23(h) ("In a

_____

[6]     Of course, Defendant's apathy on this issue is not unusual because their primary interest is in buying peace. See Pet Food Prods., 629 F.3d at 359 (Weis, J., concurring in part and dissenting in part) (describing "the parties' disincentives to invoke judicial scrutiny of fee awards").

certified class action, the court may award reasonable
attorney's fees and nontaxable costs that are authorized by law
or by the parties' agreement"). In this case, Plaintiffs seek
attorneys' fees and costs under the FDCPA's fee-shifting
provision, which provides for an award "in the case of any
successful action to enforce the foregoing liability, [of] the
costs of the action, together with a reasonable attorney's fee
as determined by the court," and therefore also requires a
reasonableness analysis. 15 U.S.C. § 1692k(a)(3). The Third
Circuit has noted that under the FDCPA, attorneys' fees are not
a special or discretionary remedy but rather "the Act mandates
an award of attorney's fees as a means of fulfilling Congress's
intent that the Act should be enforced by debtors acting as
private attorneys general." Grazino v. Harrison, 950 F.2d 107,
113 (3d Cir. 1991).

Here, the amount of compensation to class counsel is
the result of an agreement between the parties which does not
affect the amount of compensation paid to class members, who are
already receiving the maximum recovery permitted by law.
Defendant does not oppose this recovery on the part of class
counsel nor has any class member objected to the amount of the
attorneys' fees and costs. And, finally, Defendant has agreed to
pay class counsel's fees and costs separate and apart from and
in addition to the $196,960 settlement fund. Even if the Court

were to approve less than the $125,000 negotiated amount, the class would not gain a greater recovery; rather, Defendant would simply keep the money. Under these circumstances, the Court concludes that the proposed attorneys' fees do not offend what is an otherwise fair settlement. The Court will therefore grant Plaintiffs' attorneys fees and costs in the amount of $125,000.

## III.   CONCLUSION

For the foregoing reasons, the Court will grant final approval of the class action settlement in this case. An appropriate order follows.

An appropriate order follows.